## Commonwealth *vs.* Calvin Sunahara.

Middlesex. November 6, 2009. - January 29, 2010.

Present: Marshall, C.J., Cowin, Cordy, Botsford, & Gants, JJ.

*Homicide. Evidence,* Admissions and confessions, Voluntariness of statement. *Practice, Criminal,* Capital case, Admissions and confessions, Voluntariness of confession, Instructions to jury, Assistance of counsel.

At the trial of an indictment charging murder, prior to which the defendant, in a motion to suppress evidence, had unsuccessfully raised the issue of the voluntariness of his tape-recorded admissions to police, the issue of voluntariness remained a live issue at trial (thus requiring the submission of the question of voluntariness to the jury), where, at trial, the defendant extensively questioned a police detective regarding the failure to tape record the entire interview with the defendant; where defendant's counsel argued in closing that the jury should infer involuntariness from the defendant's change in position during the unrecorded sessions; and where counsel sought and obtained a "humane practice" instruction and an instruction regarding the significance of the failure to record all of the defendant's interviews. [834-836]

At a murder trial, the judge's instruction regarding the jury's consideration of the defendant's admissions to police if the jury failed to find that the admissions were voluntarily made, while containing an erroneous statement, did not create a substantial likelihood of a miscarriage of justice, where the error was embedded in the midst of other proper and emphatic instructions, such that no juror could have misunderstood the standard for considering such admissions [836-838]; further, because the error did not create a substantial likelihood of a miscarriage of justice, counsel was not ineffective for failing to object to the erroneous instruction [838].

This court declined to exercise its authority under G. L. c. 278, § 33E, to set aside or reduce a verdict of murder in the first degree. [838-839]

Indictment found and returned in the Superior Court Department on June 12, 2003.

A pretrial motion to suppress evidence was heard by *Charles M. Grabau,* J., and the case was tried before *Paul A. Chernoff,* J.

*Myles D. Jacobson* for the defendant.

*Casey E. Silvia,* Assistant District Attorney, for the Commonwealth.

CORDY, J. During the early morning hours of May 15, 2003, Kenneth Davidson was robbed and murdered outside an apartment complex where he lived in Lowell. The defendant, Calvin Sunahara; his girl friend, Samay Sorn; and a third individual, Palleka Mak, were indicted in connection with the crimes. The defendant was tried separately and, after a six-day jury trial, was convicted of murder in the first degree, on theories of deliberate premeditation and felony-murder. He was also convicted of armed robbery. He was sentenced to life without the possibility of parole on the murder conviction, and the armed robbery conviction was placed on file with the defendant's consent.

At trial, the evidence of the defendant's guilt was overwhelming, and he does not challenge its sufficiency on appeal. His girl friend testified against him pursuant to a plea agreement with the Commonwealth, and laid before the jury the scheme that was hatched by the defendant, Mak, and herself to lure the victim outside his apartment and to rob him of his money and two ounces of marijuana that they purportedly wanted to purchase. In planning for the robbery, the defendant procured a firearm, practiced shooting with it, and fashioned a crude silencer for it made out of a roll of toilet tissue. Images of the defendant and Mak walking together toward the apartment complex minutes before the victim was mortally wounded by a single bullet to the head were captured on the video surveillance camera of a neighboring store, and corroborating evidence tying the defendant to the crime was discovered in his vehicle and elsewhere during the course of the investigation.

In addition, shortly after his arrest, the defendant made a number of statements to the police about his involvement in the shooting. He first asserted that he was not involved. Eventually he admitted that he was present and participated in the robbery, but claimed that it was Mak, not he, who actually fired the shot that killed the victim. Three of the most incriminating of these statements were tape recorded, and each recording was preceded by a period of questioning that was not recorded. Whether and how these statements should have been considered by the jury is the crux of the defendant's appeal.

Essentially, the defendant contends that the voluntariness of his statements to the police was a live issue at trial; that the judge gave an incorrect humane practice instruction in his final instruc-

tions to the jury, resulting in a substantial likelihood of a miscarriage of justice; and that his trial counsel was ineffective for having failed to object to the judge's instruction as given. We conclude that, although the judge's use of the word "may" rather than "must" in one sentence of the humane practice instruction was error, such error, when viewed in the context of the instruction as a whole, did not create a substantial likelihood of a miscarriage of justice. After a review of the entire record of the trial, we also conclude that there is no basis to grant the defendant relief pursuant to our authority under G. L. c. 278, § 33E.

*Discussion.* It is well established that if the defendant raises the voluntariness of his confession or admission, the judge, before allowing such a statement to be admitted in evidence, must hold a hearing outside the presence of the jury in order to determine whether the statement was voluntary. See *Commonwealth* v. *Benoit*, 410 Mass. 506, 511 (1991). In this case, the defendant raised the issue of voluntariness prior to trial in a motion to suppress.

An evidentiary hearing was held on the motion, at which two detectives testified about their successive sessions questioning the defendant after his arrest on May 18, 2003, the statements he made during that questioning, and their decision to make tape recordings (with the defendant's consent) of three segments of the questioning. The motion judge (who was not the trial judge) found beyond a reasonable doubt that all the defendant's statements were "voluntary and the product of his rational and free will." The judge also found that the defendant was given Miranda rights before each stage of his interrogation, acknowledged and understood those rights, and "voluntarily, knowingly, and intelligently waived" them. The judge further found that the defendant was not under the influence of drugs or alcohol when he waived his Miranda rights. Consequently, the judge denied the motion to suppress. The findings of the motion judge are fully supported by the testimony and the record of the evidentiary hearing, and are not challenged on appeal.

Under the Commonwealth's humane practice doctrine, if the voluntariness of the defendant's statements remains a live issue at trial, the judge must submit the issue of voluntariness to the jury. See *Commonwealth* v. *Kirwan*, 448 Mass. 304, 318 (2007); *Commonwealth* v. *Tavares*, 385 Mass. 140, 149-150, cert. denied,

457 U.S. 1137 (1982). "[T]he judge must instruct the jury that the Commonwealth has the burden of proving beyond a reasonable doubt that the statement was voluntary and that the jurors must disregard the statement unless the Commonwealth has met its burden." *Id.* at 152.

1. *Live issue.* Relying principally on *Commonwealth* v. *Kirwan, supra,* the Commonwealth first contends that the issue of voluntariness was not a live issue at trial because the defendant failed to adduce evidence either that he was under the influence of marijuana at the time he made his statements to the police, or that something specifically happened during the unrecorded portions of his questioning by the police that would support a finding of involuntariness.

Our decision in the *Kirwan* case is not dispositive.[1] There, the defendant claimed that the failure of the police to recite the Miranda warnings when they interviewed him in his father's home was fatal to the admissibility of his statements. After an evidentiary hearing on the defendant's motion to suppress, the judge concluded, and this court affirmed, that the interrogation was not custodial, and therefore Miranda warnings were inapplicable. *Id.* at 308-313. The defendant did not raise the issue of the voluntariness of his statements before or during his trial, and did not seek a humane practice instruction. *Id.* at 318. In his motion for a new trial, Kirwan claimed that because there was evidence at his trial that he consumed a number of beers the night before he made the statements, the judge should have given the humane practice instruction, although not requested. In denying this motion, the judge found that there was "no evidence that the defendant was intoxicated" at the time he made the statements. Therefore, the issue was not a live issue at trial, and trial counsel was not ineffective for failing to request an instruction. We affirmed. *Id.* at 317-319.

In this case, the defendant raised the issue of voluntariness before trial and, at trial, extensively questioned the detective (through whom the defendant's statements were admitted) regard-

---

[1] The Commonwealth also relies on *Commonwealth* v. *Doucette*, 391 Mass. 443, 456-457 (1984). The case is also inapposite. In that case, we held that the judge's instructions, taken as a whole, were sufficient to satisfy the requirements of our humane practice doctrine, not that the instruction was not required.

ing the failure to tape record the entire interview. Defense counsel also spent much of his closing arguing that the jury should infer involuntariness from the change in the defendant's position from innocence to involvement during the unrecorded sessions.[2] In addition, counsel sought and obtained both a humane practice instruction and an instruction pursuant to *Commonwealth* v. *DiGiambattista*, 442 Mass. 423, 447-449 (2004) (*DiGiambattista*), regarding the significance of the failure of the police to tape record all of the defendant's interviews. With respect to the latter, the judge instructed the jury that, "[b]ecause certain of the defendant's statements were not recorded, you should weigh evidence of the defendant's alleged statement with great caution and care. The absence of a recording permits you, but does not compel you, to conclude that the Commonwealth has not proved beyond a reasonable doubt that the defendant's statements were voluntary." On this record, we conclude that the issue of voluntariness was sufficiently raised to require a humane practice instruction.

2. *Humane practice instruction.* The defendant contends that in his final instructions to the jury, the judge erred when he stated, "If you have a reasonable doubt as to whether the defendant was capable of understanding the meaning and affect [*sic*] of his statement, then you *may* exclude it from your deliberations." (emphasis added). The defendant argues that the permissive nature of the judge's instruction is error because unless the Commonwealth has proved that the defendant's statements are voluntary beyond a reasonable doubt, the jury "must disregard [such] statement[s]." *Commonwealth* v. *Tavares, supra* at 152. We agree that the portion of the instruction about which the defendant complains may have erroneously suggested to the jury that they had the *option* of excluding or not excluding the statements if the jury failed to find that the statements were voluntarily made.

Because trial counsel did not object to the instruction at trial, we review the instruction to determine whether any error created a substantial likelihood of a miscarriage of justice. See, e.g., *Commonwealth* v. *Cryer*, 426 Mass. 562, 570-571 (1998). This determination turns on whether a reasonable juror could have used the instruction incorrectly. See *Commonwealth* v.

---

[2]There was no evidence at trial that the defendant was under the influence of marijuana at the time of his arrest and subsequent interview.

*Watkins*, 425 Mass. 830, 837-839 (1997); *Commonwealth* v. *Rosa*, 422 Mass. 18, 27 (1996). In making this assessment, we "view the charge in its entirety." *Commonwealth* v. *Sellon*, 380 Mass. 220, 231 (1980). See *Commonwealth* v. *Whooley*, 362 Mass. 313, 319 (1972), citing *Commonwealth* v. *Aronson*, 330 Mass. 453, 457 (1953) ("The sufficiency and correctness of instructions to a jury are to be determined by consideration of the charge as a whole, and not on the basis of fragments lifted from context and then subjected to scrutiny as though each fragment had to stand or fall on its own without the aid of the remainder of the charge"). The absence of any contemporaneous objection, as is the case here, is relevant in assessing the degree of harm caused by an erroneous instruction. See *Commonwealth* v. *Preziosi*, 399 Mass. 748, 751 (1987); *Commonwealth* v. *Tavares*, *supra* at 148.

For several reasons, any error in the wording of the single challenged sentence did not create confusion or uncertainty as to the jury's proper consideration of the defendant's statements. First, immediately prior to the detective's testimony about the defendant's statements, the judge properly instructed the jury that "the next witness who's going to testify is going to testify as to statements which were reportedly or allegedly given to this witness by the defendant, and under the laws of the Commonwealth of Massachusetts, no statement of a defendant, meaning no statement of an accused, may be considered by a jury unless or until the jury finds that statement to be voluntary beyond a reasonable doubt."

Second, the judge's final instructions on how to assess the defendant's statements were both comprehensive and generous to the defendant. In them, the judge on three occasions (once before and twice after the questioned instruction) told the jury in no uncertain terms that it was the Commonwealth's burden to convince them beyond a reasonable doubt that the statements allegedly made by the defendant were voluntary, and that that is the "standard" "for acceptance of a defendant's statement."

Third, the judge followed these instructions with a *DiGiambattista* instruction, to the effect that the absence of a recording was a sufficient basis on which to conclude that "the Commonwealth has not proved beyond a reasonable doubt that the defendant's statements were voluntary."

Fourth, the *DiGiambattista* instruction was followed directly by the judge's instruction that, because the interrogation in the case was custodial, the jury also had to find beyond a reasonable doubt that the defendant knowingly and voluntarily waived his right not to speak to the police, and that if they had "a reasonable doubt . . . then [they were] to disregard any resulting statements."[3]

Where the error was embedded in the midst of these other proper and emphatic instructions, and considering the error in the context of the entire charge, we conclude that a reasonable juror would have understood that the defendant's statements were only to be considered as evidence of guilt if the Commonwealth proved them to be voluntary beyond a reasonable doubt. The error did not create a substantial likelihood of a miscarriage of justice.[4]

3. *Ineffective assistance of counsel.* The defendant also argues that his trial counsel's failure to object to the erroneous instruction was ineffective assistance of counsel. Because we conclude that the error in the instruction did not create a substantial likelihood of a miscarriage of justice, the defendant's claim of ineffectiveness also fails. See *Commonwealth* v. *Wright*, 411 Mass. 678, 682 (1992).

4. *Review pursuant to G. L. c. 278, § 33E.* We have reviewed the record in accordance with G. L. c. 278, § 33E, to determine whether there is any basis to set aside or reduce the verdict of murder in the first degree, regardless of whether such grounds were raised on appeal. We conclude that the evidence supported

---

[3]This instruction was probably a more generous instruction than that to which the defendant was entitled. "Whether a defendant has validly waived his Miranda rights is a question of law for the judge." *Commonwealth* v. *Ostrander*, 441 Mass. 344, 349 n.6 (2004), citing *Commonwealth* v. *Tavares*, 385 Mass. 140, 153 n.19, cert. denied, 457 U.S. 1137 (1982). However, "[i]n making '[their] over-all determination of voluntariness' of a statement, a jury may consider whether a defendant's waiver of his Miranda rights was voluntary." *Commonwealth* v. *Ostrander*, *supra*, quoting *Commonwealth* v. *Tavares*, *supra*.

[4]The defendant relies on *Commonwealth* v. *Riccard*, 410 Mass. 718, 723-724 (1991), to support his argument that the instruction created a substantial likelihood of a miscarriage of justice. In that case, however, the judge gave two entirely different and irreconcilable instructions that would have misled a reasonable juror. In contrast, the judge here did not give irreconcilable instructions but instead repeatedly suggested to the jury that the Commonwealth had to prove voluntariness beyond a reasonable doubt.

the defendant's conviction of murder in the first degree, whether by premeditation or felony-murder, and that there is no basis on which to reduce that verdict.

*Judgment affirmed.*